IN RE JAMES GREENOUGH.

(75 A2d 569)

February Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and ADAMS, JJ.

Opinion filed May 2, 1950.

*Effingham Evarts* for the petitioner.

*Palmer D. Ainsworth,* State's Attorney, for the State of Vermont.

CLEARY, J.   This is a petition for a writ of habeas corpus brought directly to this court.   A commissioner was appointed to hear the evidence and he reported the following facts : The petitioner is now imprisoned in the Vermont State Prison by virtue of a mittimus issued by the Hartford Municipal Court.   In 1947 the sheriff of Windsor County caused to be placed on a police teletype general broadcast the information that the petitioner was wanted because of a crime which it was claimed he had committed in the State of Vermont. The sheriff took this action on his own responsibility. No request for the petitioner's arrest was ever made by the Governor of Vermont.   On February 6, 1949, the petitioner was arrested in Gardner, Massachusetts, on two complaints, one charging him with vagrancy and the other charging him with the crime of deserting an infant and with being a fugitive from justice from the State of Vermont.   While in custody there, the petitioner told a police sergeant and a jailer that he knew what he was wanted for in Vermont.   They informally advised him to go back and face the charges and not fight extradition proceedings and that in their opinion he would "get a better break" from the Vermont authorities if he took that course.

On February 7, 1949, the petitioner was brought before the district court in Massachusetts and arraigned on both charges.   He pleaded "Not guilty" to the vagrancy charge, was found guilty, and the case was ordered filed. He was informed, in open court, that he was entitled to counsel on the fugitive from justice charge and entitled to test the legality of extradition proceedings.   He was further informed that he could go back voluntarily.   Thereafter the petitioner signed a waiver prepared and read to him by the clerk of the district court. He did so voluntarily but without reading it himself and understood the general nature and purport of the document.   The last sentence is as follows: "I hereby waive the issuance of any warrants and all other procedure incidental to interstate rendition, do not desire to test the legality of my arrest as a

fugitive from justice, and elect to return under proper custody to the jurisdiction of the State of Vermont."

Thereupon, upon the order of the judge of the district court the petitioner was delivered into the custody of the sheriff of Windsor County, transported to Woodstock and confined in the Windsor County jail. The sheriff of Windsor County had a complaint and warrant, issued by the Hartford Municipal Court on February 7, 1949, in his possession when he took the petitioner into custody at Gardner. He read the complaint to the petitioner for the first time shortly after he and the petitioner reached the Windsor County jail.

The complaint signed and sworn to by the State's Attorney charges "that James Greenough of Pittsford, in the County of Rutland at Stockbridge in said County of Windsor, on the 15th day of November, A. D. 1946 : did then and there, being over the age of sixteen years and having custody, charge and care of a child under the age of ten years, to wit, the age of one month, abandon or cause to be abandoned said child, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

On February 14, 1949, the petitioner was arraigned on this complaint in Hartford municipal court. The complaint was read to him and he was advised by the judge that he was charged with a felony and was entitled to have an attorney at the expense of the State. The petitioner insisted that he did not want a lawyer but desired to plead guilty and get it over with. The judge advised the petitioner that the offense was a serious one and that a plea of guilty would result in a prison sentence. The petitioner pleaded guilty, judgment of guilty was entered on the plea, sentence was imposed and the petitioner was committed to the State prison.

The mother of the child referred to in the complaint is one Carrie Farr. The child was born out of wedlock and Carrie Farr claims that the petitioner is its father. Carrie Farr was arrested on February 8, 1949, on a complaint charging the same offense as that in the complaint against the petitioner. She pleaded guilty, was adjudged guilty and sentenced to imprisonment. Petitioner's case was treated as a companion case to that of State v. Farr. The arraignments and sentences were at the same time, but the cases were not treated as one case. After pleading guilty, the petitioner offered to marry Carrie Farr and offered to support the child. At the time he entered

his plea the petitioner understood what he was accused of doing, had an adequate understanding of the seriousness of the charge and that he was entitled to be represented by counsel at the expense of the State if he so desired. In entering his plea of guilty he was motivated in part, but in part only, by a belief that he would receive more lenient treatment than if he stood trial. He also believed that he was guilty of the facts set forth in the complaint.

On September 2, 1949, while employed outside the prison in the custody of guards, the petitioner escaped, was later captured, returned to the prison and on September 19, 1949, was arrested upon a complaint and warrant charging him with escape from the lawful custody of the warden of the State prison.

The petitioner now claims: 1. That the Vermont and Massachusetts extradition statutes were not complied with and that, therefore, the municipal court had no jurisdiction over petitioner's person. 2. That the information upon which he was charged in the municipal court does not state facts constituting a crime known to the laws of Vermont and that, therefore, the court had no jurisdiction over the subject matter. 3. That the petitioner should be discharged from custody because he was not represented by counsel. 4. That the proceedings in the municipal court and prior thereto were not according to due process of law as prescribed by section 1 of the Fourteenth Amendment of the Constitution of the United States and Article 10 of Chapter 1 of the Constitution of Vermont. 5. That, not having been lawfully convicted in the first instance, he was not in the lawful custody of the warden of the State prison when he attempted to escape and, therefore, did not violate V. S. 47, § 8532 in such attempt.

It is virtually a universal rule of law that where a person accused of crime is found within the territorial jurisdiction and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought from another jurisdiction. 18 ALR 509; 165 ALR 948; 22 CJS 236, 242; 35 CJS 350. That is the law of this State and, therefore, the municipal court had jurisdiction of the petitioner's person. *State* v. *Brewster,* 7 Vt 118; *In Re Miles,* 52 Vt 609, 610, 611.

The prosecution was brought under V. S. 47, § 8261 which reads as follows: "8261. Cruelty to children under ten by one over sixteen. A person over the age of sixteen years, having the custody,

charge or care of a child under ten years of age, who wilfully assaults, ill-treats, neglects or abandons or exposes such child, or causes or procures such child to be assaulted, ill-treated, neglected, abandoned or exposed, in a manner to cause such child unnecessary suffering, or to endanger his health, shall be imprisoned in the state prison not more than two years or fined not more than $500.00, or both."

The petitioner claims that the complaint in question is fatally defective because it failed to allege that the act complained of was done "wilfully" and "cruelly" and "in a manner to cause such child unnecessary suffering" or "to endanger its health", that it alleges in the disjunctive two crimes, abandonment and causing abandonment and that it alleges elements that might bring it within either V. S. 47, §§ 8260 or 8261.

The word cruelty appears only in the title to the section of the statute in question so it was unnecessary to allege that the abandonment was cruel. It is only when the language of the act itself is doubtful in meaning that the title is considered. *State* v. *Taranovich's Estate,* 116 Vt 1, 68 A2d 796. But even if the word cruelly was included in the text and necessary to be alleged in the complaint that could be done by amendment as hereinafter shown. It was essential that the complaint allege that the abandonment was wilful and that it was done in a manner to cause the child unnecessary suffering or to endanger its health. *State* v. *Gosselin,* 110 Vt 361, 365, 6 A2d 14. The omission of these words would have been fatal on demurrer or on a motion in arrest of judgment. But this does not mean that the petitioner would have been discharged for our law is well settled that an information or complaint of a state's attorney can be amended, both in form and substance. *State* v. *White,* 64 Vt 372, 373, 24 A 250; *State* v. *Meacham,* 67 Vt 707, 32 A 494; *State* v. *Hubbard,* 71 Vt 405, 406, 45 A 751; *State* v. *Austin,* 72 Vt 46, 47 A 102; *State* v. *Barrell,* 75 Vt 202, 204, 54 A 183, 98 Am St Rep 813; *State* v. *Palmer,* 94 Vt 278, 281, 283, 110 A 436; *State* v. *Ryea,* 97 Vt 219, 221, 122 A 422. What we have already said applies as well to the claim that the crime alleged was in the disjunctive and that it alleges elements that might bring it within either V. S. 47, §8260 or 8261. The complaint was defective in both form and substance. It did not reasonably indicate the exact offense so as to enable the petitioner to make intelligent preparation for his defense and was fatally defective both at common law and under

ch. 1 art. 10 of our State Constitution. But it was amendable and so the petitioner would not have been discharged. *State* v. *Rouillard,* 107 Vt 487, 489, 490, 180 A 890.

It is well settled that a writ of habeas corpus cannot be given the effect of a writ for the correction of errors and irregularities. *In re Thompson,* 111 Vt 7, 11, 9 A2d 107. The proceedings under review, however irregular they may have been, will withstand the writ if the court whose action is assailed has jurisdiction of the subject matter and the person, and renders such a judgment or makes such an order as it is authorized to render or make in that class of cases. *In re Turner,* 92 Vt 210, 214, 102 A 943; *In re Parker,* 107 Vt 463, 468, 181 A 106. Where the complaint though inartificially drawn, shows an evident attempt to state the essential facts which constitute the crime sought to be charged, a defect in statement will not warrant a discharge. To hold otherwise would be to substitute the writ for the regular proceedings in error and would result in intolerable interference with the ordinary process of criminal prosecutions. *In re Turner,* 92 Vt 210, 217, 102 A 943.

The complaint in question charged abandonment and under the statute, the court had jurisdiction of the subject matter. Therefore, after plea of guilty and judgment thereon habeas corpus cannot avail the petitioner.

The petitioner now claims that his lack of representation by counsel violated the due process clause of the Fourteenth Amendment of the Constitution of the United States, also Article 10 Chapter 1 of the Constitution of Vermont giving him the right to be heard by counsel, and that the right could not be waived. He relies on *Johnson* v. *Zubst,* 304 US 458, 58 S Ct 1252, 82 L ed 1461, 146 ALR 357. That case holds the right to representation by counsel can be waived and whether one accused of crime has done so depends upon the particular facts and circumstances surrounding each case. To the same effect are other cases cited by the petitioner. *Betts* v. *Brady,* 316 US 454, 62 S Ct 1252, 86 L ed 1595; *Foster* v. *Illinois,* 332 US 133, 67 S Ct 1716, 91 L ed 1955. In the present case the complaint was read to the petitioner twice, once by the sheriff and a second time in open court. The judge advised him that he was charged with a felony and that he was entitled to have an attorney at the expense of the state. The petitioner stated, in fact insisted, that he did not want a lawyer but desired to plead guilty. The penalty for the offense was read in

the petitioner's hearing before plea and the judge advised him that the offense was a serious one and that a plea of guilty would result in a prison sentence. Prior to the petitioner's pleading guilty, the State's attorney informed the court in the presence of the petitioner that if such a plea were made he would ask for the maximum sentence. Before plea the judge took much time and pains to warn and inform the petitioner. The commissioner who heard the testimony on the petition has found that, when the petitioner pleaded guilty, he had an adequate understanding of the seriousness of the charge and an adequate understanding that he was entitled to be represented by counsel at the expense of the State if he so desired. Under these circumstances we are satisfied that the petitioner's rights were properly safeguarded and he had a fair hearing.

So far as we have been able to find the only Vermont case dealing with the question here raised is *State* v. *Gomez,* 89 Vt 490, 96 A 190. There the court refused to assign counsel to be paid by the State and to the respondent's exception this Court said, p. 496: "The claim of respondent's counsel that under Article 10 of the Constitution of Vermont it was the duty to assign counsel at the State's expense is without merit. There is no statute making it the duty of the Court to assign counsel at the State's expense under any conditions. The only statute touching this matter is P. S. 2261, (now V. S. 47, § 2397) which merely provides that no compensation shall be paid by the State to counsel assigned to defend a respondent in a criminal proceeding except to counsel assigned by the county court in capital causes, or in causes where punishment is by imprisonment in the State's prison, etc. If the court believed that the respondent had means with which to defend himself, it was the court's duty to refuse to assign counsel at the State's expense. This whole matter was within the court's discretion. This discretion appears to have been judicially exercised. The exception is overruled." V. S. 47, § 1458 gives the municipal court the same powers and duties as a county court concerning assignment of counsel.

The petitioner's brief relies on *State* v. *Hirsch,* 91 Vt 330, 100 A 877, but that case expressly states that no question of constitutional right is involved and the respondent there rests his case solely on a statute relating to the right of trial by jury.

Except in some jurisdictions in capital cases the right to appear or be heard by counsel is held generally to be a personal right which can be waived. 23 CJS 316; 14 Am Jur 887; *State* v. *Yoes,* 67 W

Va 546, 68 SE 181, 140 Am St Rep 978; *State* v. *Raney,* 63 NJL 363, 43 A 677; *State* v. *Murphy,* 87 NJL 515, 94 A 640, 646; *State* v. *Mewhinney,* 43 Utah 135, 134 P 632, LRA 1916 D 590, 593; *Batchelder* v. *State,* 189 Ind 69, 125 NE 773, 776.

█ In *Howard* v. *Village of West Randolph,* 82 Vt 260, 262, 72 A 1076, 1077, this Court said, "It is well settled that one may by his acts or omissions waive a constitutional right." Here the record shows that, with adequate understanding that he was entitled to be represented by counsel at the expense of the State, the petitioner insisted on waiving his right. There is nothing in the Constitution, either Federal or State, or in our statute law to prevent his waiving that right, if he saw fit to do so. Having done so, he cannot now be heard to complain that he was denied due process of law or the law of the land. Therefore, it follows that he was in lawful custody when he attempted to escape from the custody of the warden of the State prison.

█ The petitioner took exception to certain findings of the Commissioner and to his refusal to find as requested. His first such exception is to the finding that the petitioner understood the general nature and purport of the waiver of extradition which he signed on the ground that there is no evidence to support the finding. The evidence showed that after his arrest in Massachusetts the petitioner knew what he was wanted for in Vermont, that the judge informed him in open court that he was entitled to counsel in the Fugitive from Justice charge and entitled to test the legality of extradition proceedings. He was also informed that he could go back voluntarily. Thereafter the clerk of the court prepared the waiver and read it to the petitioner. After hearing it read he voluntarily signed it. The words in the waiver itself are enough to support the findings and the finding is amply supported by other evidence shown in the transcript. So it must stand. *Colby's Executor* v. *Poor,* 115 Vt 147, 152, 55 A2d 605.

█ The second exception is to the refusal to find that before sentence the judge of the Vermont court advised the petitioner that "a plea of guilty would result in imprisonment for the maximum term provided by statute." Neither the exception nor the petitioner's brief states why the finding should have been made or how the refusal to find was harmful to the petitioner. So the exception is too general to be of any avail. *Little* v. *Loud,* 112 Vt 299, 302, 23 A2d 628; *Butler* v. *Milton Creamery,* 112 Vt 517, 519, 28 A2d

395. In fact the finding, if made, would have shown an additional warning by the judge before he accepted the petitioner's plea.

█ The third exception is to the finding that the petitioner had an adequate understanding of the seriousness of the charge and an adequate understanding that he was entitled to be represented by counsel at the expense of the State if he so desired, on the ground that the conclusions of fact therein are not supported by the evidence and are inconsistent with other findings. But the findings also state and the transcript shows that before taking the plea the judge took much time and pains to warn and inform the petitioner. The finding is amply supported by the evidence shown in the transcript so it must stand. *Colby's Executor* v. *Poor, supra.* That is also true of the fourth exception which is to the finding that, at the time the petitioner entered his plea, he understood what he was accused of doing and was motivated, in part only, by a belief that he would receive more lenient treatment than if he stood trial and that he believed he was guilty of the facts set forth in the complaint.

The fifth exception is to the finding that the petitioner understood the general nature of the proceedings against him, both in Gardner, and in the Hartford municipal court on the ground that the finding is irrelevant to any question of law involved, is not supported by the evidence and is so vague in its terms that it might be susceptible of misinterpretation, particularly standing with other findings excepted to. The finding is relevant to the issues whether the petitioner waived extradition, waived assignment of counsel and whether his plea of guilty was binding on him. The finding is supported by the evidence and so must stand. *Colby's Executor* v. *Poor, supra.* The remaining grounds of the exception are too indefinite and general to be of any avail. *Little* v. *Loud, supra.*

The sixth exception is to the finding that "I am asked to find that no evidence was taken at the arraignment and sentence." and "If the request infers that Judge Guarino pronounced sentence without apprising himself of the facts and circumstances of the case, I refuse to so find." and to the Commissioner's refusal to find that, for the purpose of imposing sentence, Judge Guarino made no inquiry as to the circumstances under which the alleged crime was committed. The grounds stated are that there is no evidence to support the findings excepted to and very substantial evidence to support the requested finding. The exception is without merit because the quoted sentences are not findings and though the peti-

tioner claims there is very substantial evidence to support the request the portions of the transcript to which he calls attention do not support his request.

The seventh exception is to the refusal to find that the petitioner believed that his relations with Carrie Farr and the birth of an illegitimate child of which he was claimed to be the father were a part of the crime charged. He claims that the evidence supports this conclusion and there is no evidence to the contrary. The exception has no merit because in the same paragraph the petitioner admits and the transcript shows that Judge Guarino informed the petitioner that was not the particular issue before the court at that time.

The eighth and last exception is to a refusal to find that, at the time of entering his plea, the petitioner had very mistaken and confused notions of what he was accused of doing, that he is an uneducated man, ignorant of the meaning of legal terms and of the law, incapable of rational thinking, wholly unqualified to determine whether a plea of guilty was justified or appropriate or to defend himself in a trial involving difficult questions of law and fact and that, if in fact the petitioner waived his right to be represented by counsel, such waiver was unintelligent and not understanding. The exception then states that the evidence and other findings support these requests and there is no evidence inconsistent with them. He cites no evidence or findings to support them and from what we have already said it is clear that the evidence and other findings do not support the requests. So the exception is without merit.

*It is adjudged that the petitioner James Greenough is not illegally deprived of his liberty and he is remanded into the custody of the warden of the State's prison and his petition is dismissed.*