938 A.2d 1226 (2007)
2007 VT 88
Christina CARDIFF and Office of Child Support
v.
Mark ELLINWOOD.
No. 06-129.
Supreme Court of Vermont.
September 7, 2007.
*1227 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND, Associate Justices and DiMAURO, District Judge, Specially Assigned.

ENTRY ORDER
¶ 1. The Office of Child Support (OCS) and mother[*] appeal a decision of the family court that no child support obligation may accrue against father while he receives public assistance benefits. 33 V.S.A. § 3902(e). We agree with the family court that, under the plain language of § 3902(e), "[w]hen a responsible parent is receiving welfare assistance . . . no amounts shall accrue or be collected under the support order while the welfare assistance is being received." We therefore affirm.
¶ 2. The relevant facts are few. Mother and father have one child together, who lives with mother. After a contested hearing in January 2004, the family court magistrate temporarily set father's monthly support obligation at $528.68 based on his job as a mechanic. The case was continued for further hearing in April 2004 to address, in part, father's request for a reduction of his support obligation. By then, father was no longer employed as a mechanic, and he, his wife, and her child received Reach Up Financial Assistance (RUFA), formerly known as Temporary Assistance to Needy Families (TANF). The magistrate denied his request for a reduction based on her finding that father had voluntarily quit his job, and thus, income should be imputed to him at his previous rate of earnings. See 15 V.S.A. § 653(5)(A)(iii) (including parent's potential income as "gross income" for purposes of child support if parent is voluntarily unemployed, subject to conditions). Father did not appeal that order, but also did not pay his child support obligation, resulting in OCS's initiation of an enforcement proceeding against him in January 2005.
¶ 3. In September 2005, the magistrate entered judgment in favor of mother in the amount of $6615.39, including child support arrears of $6262.43. Over father's objection, the magistrate declined to exempt him from his child support obligation during the period his household received public assistance. Although noting that 33 V.S.A. § 3902(e) "automatically cease[s] payment of child support upon [the] obligor's receipt" of statutory benefits, the magistrate concluded that this provision "squarely conflicts" with other, more recent child support statutes and case law, discussed below. The magistrate ultimately refused to exempt father from his obligation based solely on his receipt of public assistance because it would be "an absurd and irrational result," and one contrary to the "stated policy of the Legislature that parents must support their children." Father appealed the magistrate's § 3902(e) analysis to the family court, which, in February 2006, reversed. OCS thereafter appealed the family court's order to this Court.
¶ 4. The sole question on appeal, therefore, is whether child support may *1228 accrue or be collected while the obligor parent receives public assistance, including RUFA benefits, under § 3902(e). As a matter of statutory interpretation, our review is de novo. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893.
¶ 5. The full text of 33 V.S.A. § 3902(e) is as follows:
When a responsible parent is receiving welfare assistance under Title XVI of the Social Security Act or chapter 11 of this title, on the parent's own behalf or on behalf of a dependent child, no amounts shall accrue or be collected under the support order while the welfare assistance is being received. The commissioner shall monitor receipt of welfare assistance by responsible parents to ensure collection action is not instituted while welfare assistance is being received and that collection action is instituted promptly when the responsible parent no longer receives assistance.
Responsible parent as used in this provision means "the natural or adoptive parent or stepparent, to the extent the stepparent owes a duty of support under section 296 of Title 15, of a dependent child." Id. § 3901(7). It is undisputed that RUFA benefits are "welfare assistance" within chapter 11 of Title 33. See id. §§ 1101-1134 (describing RUFA program).
¶ 6. OCS argues, as the magistrate found, that § 3902(e) does not prevent the accrual or enforcement of a child support obligation because it "clearly" conflicts with other, more recently enacted statutes. Specifically, OCS points to three such statutes: 15 V.S.A. § 650, which "declares as public policy that parents have the responsibility to provide child support and that child support orders should reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the family remained intact"; 15 V.S.A. § 656(b) which states that even if available income is less than the lowest figure in the support guideline, the court shall use its discretion and "shall require payment of a nominal support amount"; and 15 V.S.A. § 653(5)(A)(iii), which requires the court to impute potential income to a voluntarily unemployed parent as discussed above. OCS urges that these statutes, and the case law construing them, provide that "no one is to be exempt from the obligation to pay child support." Viskup v. Viskup, 150 Vt. 208, 210, 552 A.2d 400, 402 (1988).
¶ 7. We do not agree with OCS, or the magistrate, that there is an irreconcilable conflict between the plain language of § 3902(e) and these provisions of Title 15. "When embarking on the process of statutory construction, we have established a clearly articulated hierarchy of available sources and turn first to the plain, ordinary meaning of the language." Chittenden Town Sch. Dist. v. Dep't of Educ., 169 Vt. 310, 326, 738 A.2d 539, 551 (1999) (citation omitted). If legislative intent can be derived from the plain language of a statute alone, "our task is normally at an end." Id. One reason for our primary reliance on plain language in this context is "that the Legislature can change the wording to reflect its true intent with relative ease." Id. at 327, 738 A.2d at 552.
¶ 8. Undeniably, the Legislature has set forth a general policy in favor of parents' "responsibility to provide child support." 15 V.S.A. § 650. We have recognized as much in our cases construing Title 15. See, e.g., Viskup, 150 Vt. at 210, 552 A.2d at 402. To implement this policy, the Legislature has provided express guidance as to how to compute a support award under § 656 based on the definition of "available income" in § 653. "Gross income," and therefore "available income" for purposes of child support, id. § 653(1), may include potential income for a voluntarily unemployed *1229 parent, id. § 653(5)(A)(iii), but it expressly excludes amounts "received from means tested public assistance programs, including but not limited to, aid to families with dependent children, supplemental income, food stamps, and general assistance." Id. § 653(5)(B). This exclusion from income of benefits, of which RUFA is a part, is entirely consistent with the prohibition of the collection or accrual of child support for parents receiving public assistance set forth in 33 V.S.A. § 3902(e). Both provisions, including the later-enacted definitions in Title 15, represent deliberate exceptions to the general rule requiring parents to pay child support.
¶ 9. The "liberal construction" we have employed with respect to child support enforcement statutes, Viskup, 150 Vt. at 211, 552 A.2d at 402, cannot trump their plain language. See Chittenden Town Sch. Dist., 169 Vt. at 326, 738 A.2d at 551. Hunt v. Hunt, 162 Vt. 423, 648 A.2d 843 (1994) did not involve 33 V.S.A. § 3902(e); the language OCS cites from these cases is taken out of context and does not control our analysis here. Having not addressed the issue previously, we find no direct conflict between 33 V.S.A. § 3902(e) and Title 15including 15 V.S.A. § 656(b)'s requirement of a nominal amount if the parent's available income is below that contemplated in the support guideline. Under Title 15 alone, a parent's receipt of RUFA is not "available income." Further, we do not agree with OCS's suggestion that the magistrate's imputation of "potential income" to father under § 653(5)(A)(iii) trumps all other provisions. Under 33 V.S.A. § 3902(e), no such analysis of available income in Title 15 should even be triggered because the statute requires "the commissioner [to] monitor receipt of welfare assistance by responsible parents to ensure collection action is not instituted while welfare assistance is being received." (emphasis added). The unambiguous language of 33 V.S.A. § 3902(e) and the definitions in Title 15 represent a conscious and enduring choice on the part of the Legislature to exempt from the general obligation of child support those parents who, by virtue of their receipt of need-based assistance, are least able to pay.
¶ 10. The crux of OCS's argument, as well as the magistrate's order, is one of equities. OCS repeatedly asserts that father is "deliberately unemployed" and that he has "chosen to accept public assistance." OCS makes much of the fact that father is not disabled, and that it is "obvious that father does not want to pay support, as he has made no effort to do so, and no effort to seek employment consistent with his earning capacity." The magistrate particularly emphasized that father's wife started an auto-repair business, to which father "donat[es]" his time as the sole employee, leading the magistrate to question father's eligibility for RUFA in the first place.
¶ 11. Even if we agreed with OCS's characterization and understood the magistrate's skepticism, we must interpret the statute as written. Section 3902(e) does not ask us to consider why an individual receives public assistance. The fact that he receives assistance alone ends the inquiry. See State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) (prohibiting this Court from "read[ing] into a statute something which is not there unless it is necessary in order to make the statute effective"(citation omitted and emphasis in the original)). Here, it bears noting that the RUFA program has extensive and detailed work requirements. 33 V.S.A. §§ 1113-1114. The Legislature may well have concluded that the issue of whether a recipient is voluntarily unemployed should be determined by staff at the Department for Children and Families under specific *1230 rules than by child support magistrates under a more broad and general standard. Moreover, it is necessary that the child support and income maintenance decisions be consistent. We note that OCS is part of the Agency of Human Services and is in a position to work with its sister department in that agency to create consistency. Ultimately, as the family court noted, the determination of which parents are least able to pay is "inevitably a line-drawing exercise by the Legislature," and, although the receipt of RUFA benefits alone may appear simplistically drawn in certain circumstances, it is a line we must nevertheless respect.
¶ 12. OCS further argues that 33 V.S.A. § 3902(e) may be limited to situations in which both parents receive public assistance and support rights are assigned by the support obligee. We agree with father that this argument was not raised below, but, as a further matter of statutory interpretation, we nevertheless exercise our discretion to address it here in the interests of judicial economy. See, e.g., In re Estate of Gillin, 172 Vt. 546, 548, 773 A.2d 270, 273 (2001) (mem.) (reaching issue not decided by trial court in interests of judicial economy); Reporter's Notes, V.R.A.P. 2 (noting Court's ability to suspend rules "to secure the just, speedy, and inexpensive determination of every action"). This argument is based primarily on the fact that the statute is titled "Assignment of support rights by public assistance recipients; proceedings to establish support obligation." It readily fails on at least two grounds. First, we do not afford the title of a statute more authority than the words of the statute itself. In re Greenough, 116 Vt. 277, 281, 75 A.2d 569, 572 (1950) ("It is only when the language of the act itself is doubtful in meaning that the title is considered."). Section 3902(e) is not limited to instances in which "both parents" receive public assistance; rather, it applies simply when "a responsible parent is receiving welfare assistance." (emphasis added). Further, we interpret the semicolon in the title to mean that § 3902 addresses both the assignment of rights and enforcement proceedings, consistent with the use of semicolons in the rest of the statutory titles in Title 33. See, e.g., 33 V.S.A. § 3701 ("Parent-child center program; eligibility"); id. § 4101 ("Office of child support; designation as IV-D agency; legislative purpose"). We do not construe either of the terms in the title to necessarily limit the scope of the other, as OCS contends.
¶ 13. Thus, we hold that the plain language of 33 V.S.A. § 3902(e) prohibits OCS from pursuing enforcement of child support obligations against father for periods in which he received RUFA. The family court was correct in remanding this case to the magistrate for recalculation of father's child support arrears accordingly.
Affirmed.
NOTES
[*] This case was initially brought by OCS on behalf of mother, who lives in Rhode Island, pursuant to the Uniform Interstate Family Support Act (UIFSA), 15B V.S.A. §§ 101-904. Mother did not submit a separate brief or oral argument in this appeal. We therefore consider the arguments of OCS and father alone.