2015 VT 72

## Sheila Merchant v. Eric Merchant

[124 A.3d 443]

No. 14-057

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed May 15, 2015

Motion for Reargument Denied June 9, 2015

*Cynthia L. Broadfoot* of *Broadfoot, Attorneys at Law,* Burlington, for Plaintiff-Appellee.

*Eric Merchant,* Pro Se, Jericho, Defendant-Appellant.

¶ 1. **Robinson, J.** In this case, father Eric Merchant challenges the findings and conclusions of the family-division magistrate, as affirmed by the Superior Court, Family Division, Addison Unit, denying his 2011 motion to modify a 2009 child-support order governing support of the two children he had with mother Sheila Merchant. We affirm.

¶ 2. Father and mother married in 2000. They subsequently had two children. The parties separated in 2008, and in August 2009 the superior court issued a stipulated final divorce order providing for shared physical rights and responsibilities for their children and a contact schedule allocating fifty percent of the children's time to each parent. The stipulated order provided that each party would bear the cost of child-care expenses for the children during those times that the children were with them pursuant to the contact schedule. It further provided that mother would be entitled to claim the minor children as dependents for state and

federal income-tax purposes. The child-support-obligation guideline calculation was $112.52 per month from father to mother. This guideline calculation, which was attached to the final child-support order, took into account the parents' respective qualifying child-care costs. Father agreed to an upward deviation from the guideline amount, to $200 per month plus $43 per month in arrears, which would automatically rise to $243 per month when the arrears of $1852 were paid (after forty-three months).

¶ 3. In November 2011, father filed a motion to modify child support. After a contested hearing in September 2012, the magistrate dismissed father's motion to modify on the ground that father had failed to show a real, substantial, and unanticipated change of circumstances — a statutory predicate to modification of a child-support order. See 15 V.S.A. § 660(a).[1] In reaching this conclusion, the magistrate calculated the current child-support obligation that would be due based on the parties' respective incomes and other relevant inputs in child-support guideline formula. The magistrate concluded that father's current child-support obligation would be $256.43 per month. Because this obligation did not differ from the existing child-support obligation by more than ten percent in a downward direction, the magistrate concluded that father had failed to show a real, substantial, and unanticipated change of circumstances. Father disputed several elements of the magistrate's guideline calculation.

¶ 4. Father filed a motion to reconsider, arguing among other things that the magistrate miscalculated his wages by double-counting a component of his income; improperly relied on a guideline calculation that assumed that the parents were equally sharing the dependent tax exemptions for the children, when in fact they were not; and improperly accounted for the parties' child-care costs when the underlying divorce order provided that each party would bear his or her own child-care costs. He also noted an error in the magistrate's decision with respect to whether the underlying child-support order included an additional-dependent deduction. In a November 2013 order, the magistrate reaffirmed the dismissal of father's motion to modify.

---

[1] 15 V.S.A. § 660(a)(1) provides an alternate path to modification allowing the court to waive the requirement of a real, substantial, and unanticipated change of circumstances if the order has not been modified for at least three years. Father filed the motion at issue in this appeal less than three years from the date of the 2009 child-support order, so this path was not available to him.

¶ 5. Father appealed to the family division. See 4 V.S.A. § 465; V.R.F.P. 8(g). Father renewed his arguments that the magistrate incorrectly established the guideline amount by (1) incorrectly calculating his monthly income, imputing a higher income than was actually the case; (2) relying on a guideline calculation that equally divided credit for the tax exemption for dependent children between father and mother, despite the final order's allocation of the right to claim such tax exemption solely to mother; and (3) including child-care costs, even though the final order provided that "[t]he parties agree that each party shall bear costs for child care expenses for the children during those times that the children are with them pursuant to the contact schedule herein." These are the only arguments father raised in his appeal.

¶ 6. In January 2014, the family division affirmed. It concluded that the magistrate's determination of father's income was supported by the evidence and within the magistrate's discretion. With respect to the role of tax exemptions in the guideline calculation, the court held that statute requires that the child-support calculation assume that each parent takes an equal share of the exemptions attributable to the children subject to the order, regardless of the parents' actual allocation of those exemptions. With respect to the child-care costs, the family division ruled that the magistrate's consideration of the parties' qualifying child-care costs was consistent with the requirement that child support be calculated according to the guideline formula, which requires consideration of qualifying child-care costs in determining the parties' available income, and ultimately the child-support obligation. Father appealed to this Court.

¶ 7. "[W]e will not disturb a trial court's findings of fact unless they are clearly erroneous"; that is, we will uphold the court's conclusions "as long as they are supported by adequate findings, which are in turn supported by sufficient evidence in the record." *Kanaan v. Kanaan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995). We review the legal conclusions of the magistrate and the family division de novo. *Coyle v. Coyle*, 2007 VT 21, ¶ 5, 181 Vt. 583, 925 A.2d 996 (mem.).

¶ 8. ▮ The court may modify a child-support order upon a showing of a real, substantial, and unanticipated change of circumstances. 15 V.S.A. § 660(a)(1). A child-support order that varies more than ten percent from the amounts required to be paid

under the support guideline is considered to be a real, substantial, and unanticipated change of circumstances. *Id.* § 660(b).

## I.

¶ 9. On appeal, father makes several new arguments challenging the magistrate's, and the family division's, application of this requirement. First, he argues that under this provision, the court automatically had jurisdiction to modify the order because the 2009 order was for $200 per month, while the 2009 guideline amount was $112.52 per month. Citing our decision in *Grimes v. Grimes*, 159 Vt. 399, 621 A.2d 211 (1992), father argues that the ten-percent differential between the child-support guideline calculation and the child-support obligation ordered should be calculated as of the time the original order was issued, rather than at the time of the proposed modification. He essentially argues that because the deviation built into the underlying child-support order in this case was big enough to allow for modification immediately following that order, the magistrate had continuing authority to modify the order — even if subsequent changes in the parties' respective finances reduced the gap between the guideline calculation and the child-support order to less than ten percent.

¶ 10. Second, father argues that he did not have to show that the child-support order varied more than ten percent from the guideline-support amount pursuant to § 660(b) because his receipt of means-tested public-assistance benefits constituted a change of circumstances pursuant to § 660(c)(1). In support of this argument, he cites his attendance at school through the Veterans Affairs Vocational Rehabilitation program, his receipt of a Pell Grant, the children's entitlement to Medicaid, and his receipt of VA disability benefits.

¶ 11. ▓ Father did not make either of these arguments to the magistrate, nor to the trial court. We decline to address these contentions now because father has raised them for the first time on appeal. See *Begin v. Benoit*, 2006 VT 130, ¶ 7, 181 Vt. 553, 915 A.2d 786 (mem.) ("Where an aggrieved party fails to make a specific objection in the trial court, this Court need not address the issue on appeal."); *Osmanagic v. Osmanagic*, 2005 VT 37, ¶ 10, 178 Vt. 538, 872 A.2d 897 (mem.) (noting that issues not briefed

at trial court and raised for first time on appeal will not be considered by this Court).[2]

## II.

¶ 12. Father also argues that the trial court erred in failing to consider, when calculating the child-support guideline amount, that the parties' agreement allocated the right to claim the tax exemptions for their minor children to mother. Because the guideline calculation assumes that the tax exemptions are divided evenly between the parties, the calculation overestimated father's available income (because it imputed to him a tax exemption that he was not actually eligible to take) and underestimated mother's available income (because it did not account for the fact that she took *both* exemptions pursuant to the terms of the final divorce order). He contends that the magistrate should have done a "manual" guideline calculation that accounted for the reality of the parties' allocation of the tax exemptions.

¶ 13. ■ The child-support guideline formula was developed by the Agency of Human Services in response to the Legislature's directive. 15 V.S.A. § 654 ("The secretary of human services shall prescribe by rule a guideline for child support which reflects the percent of combined available income which parents living in the same household in Vermont ordinarily spend on their children."). The amount of child support determined under the guideline "shall be presumed to be the total support obligation of parents." *Id.*

¶ 14. ■ Although the Legislature delegated authority for developing the guideline formula to the Agency of Human Services, it established a statutory framework for the formula. One of the building blocks of the child-support-guideline calculation is the available income of the child's parents. The Legislature has defined "available income" to mean "gross income" minus spousal support owed, preexisting child-support obligations, health-insurance costs, FICA taxes, and state and federal income taxes.

---

[2] To the extent father argues that the magistrate erred in focusing on the *direction* of the variance between the new guideline calculation and the child-support order, since the magistrate's guideline calculation did vary from the child-support order by more than ten percent *in an upward* direction, and § 660(b) does not limit the direction of the variance that can support a modification, he likewise failed to preserve this argument.

*Id.* § 653(1). The statute prescribes the manner in which state and federal income taxes are to be calculated:

> [F]or parents who share custody as defined in section 657 of this title, using the standard deduction, head of household filing status and one exemption for the parent and *an equal share of the exemptions attributable to the children who are the subject of the order*, plus earned income tax credits if applicable . . . .

*Id.* § 653(1)(D)(iii) (emphasis added).

¶ 15. ■ The assumption that father is eligible to take a dependent exemption for one of the children is not, as father suggests, merely a default assumption in the computer program that implements the guideline. Rather, the assumption is "baked into" the statute governing the calculation of child support. In order to satisfy father's request that his available income be calculated with reference to the parties' actual allocation of the tax exemptions for their dependent children, a magistrate would have had to ignore the statutory definition of "available income" promulgated by the Legislature. The question then is whether, in calculating child support pursuant to the guideline, the magistrate must, or even *can* substitute a calculation of the parents' respective available incomes that reflects their actual practice with respect to the dependent exemptions for the children.

¶ 16. ■ We have touched on this issue once, without resolving it. In *Adamson v. Dodge*, we described the process for calculating a child-support obligation pursuant to the guideline. 174 Vt. 311, 318, 816 A.2d 455, 462 (2002). In that case, the final divorce order allocated all four dependent exemptions to the noncustodial father. In a footnote, we wrote:

> [U]nder § 653, the amount of state and federal taxes to be subtracted from gross income in order to determine a parent's available income must be calculated based on certain assumptions rather than on actual taxes paid. For purposes of determining available income under § 653, a noncustodial parent such as father in this case is supposed to calculate state and federal income taxes using the standard deduction, single filing status, and one exemption. 15 V.S.A. § 653(1)(D)(ii). No provision is made for a situation where, as here, the parties have agreed by

> stipulation to allocate the tax exemptions for dependents to the noncustodial parent. . . . On remand, father is free to argue that a guidelines calculation should be made based on the money he actually pays in taxes under the allocation of tax exemptions that has been agreed upon in this case.

*Id.* at 318 n.2, 816 A.2d at 462 n.2. Although this Court recognized that the amount of state and federal taxes to be subtracted from gross income were to be based on certain assumptions, rather than taxes actually paid, we also recognized that the assumptions did not match the actual circumstances of that case and left the door open to an argument that the guideline calculation should be adjusted accordingly.

¶ 17. ▉ With the issue squarely before us now, we conclude that the magistrate did not err in declining to perform the alternate calculation advocated by father. We reach this conclusion because the terms of the statute are clear and unambiguous. *Cardiff v. Ellinwood*, 2007 VT 88, ¶ 7, 182 Vt. 602, 938 A.2d 1226 (mem.) ("If legislative intent can be derived from the plain language of a statute alone, our task is normally at an end." (quotation omitted)).

¶ 18. ▉ We recognize that application of the statute according to its plain language leads to anomalous results in cases like this. This is arguably at odds with thè Legislature's goal of ensuring that at *either* of these jointly custodial parents' homes the minor children are able to enjoy the standard of living they would have enjoyed had the parents remained married at either parent's home. 15 V.S.A. § 650 ("The legislature further finds and declares as public policy that . . . child support orders should reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the family remained intact."); *id.* § 657(a) ("When each parent exercises physical custody for 30 percent or more of a calendar year, the total child support obligation shall be increased by 50 percent to reflect the additional costs of maintaining two households."); see also *LaMothe v. LeBlanc*, 2013 VT 21, ¶ 27, 193 Vt. 399, 70 A.3d 977 ("In a shared-custody-child-support environment, *both* parents are presumed to be maintaining households and providing support for the child."); *Grimes*, 159 Vt. at 406, 621 A.2d at 214 ("A clearly

excessive child support order may lead, as here, to collection difficulties and periodic returns to court.").

¶ 19. Nonetheless, we conclude that the Legislature could have intended to simplify the process of calculating child-support obligations pursuant to the guideline formula by imposing certain assumptions about the allocation of dependent exemptions rather than requiring the magistrate to calculate available income on the basis of inputs varying from case to case. Cf. *Vill. of Lyndonville v. Town of Burke*, 146 Vt. 435, 437, 505 A.2d 1207, 1209 (1985) ("The primary purpose of [the statute] is to provide for the listing of real estate for taxation purposes. It seems reasonable to conclude that the Legislature intended to make the carrying out of this purpose as simple and easy as possible for the listers . . . ." (quotation omitted)). If we are mistaken, and the Legislature intended for "available income" to be defined for the purposes of a guideline calculation in a way that takes into account the parties' actual allocation of the dependent-child tax exemptions, it should amend the statute. See *Cardiff*, 2007 VT 88, ¶ 7 ("One reason for our primary reliance on plain language in this context is that the Legislature can change the wording to reflect its true intent with relative ease.") (quotation omitted). In the meantime, if parties to a divorce stipulate to an allocation of the dependent-child tax exemptions that differs from the assumptions embedded in the child-support statute, they are on notice that their agreement may have a distorting impact on the resulting child-support calculation under the guideline.

¶ 20. ▮ The harsh anomalousness of this statute as applied in a case like this is tempered by the availability of a deviation from the child-support guideline. See 15 V.S.A. § 659(a) ("If, after consideration of [relevant] factors, the court finds that application of the guidelines is unfair to the child or to any of the parties, the court may adjust the amount of child support."). The possibility of a deviation does not help father in this case in connection with his motion to modify, however, because he fails to overcome the threshold "changed circumstances" requirement. In general, though, the impact of a mismatch between the statutory assumptions about who is eligible to take dependent-child exemptions and the parties' actual allocation is a proper consideration in the deviation analysis. See, e.g., *Fontenot v. Fontenot*, 898 S.W.2d 55, 55-57 (Ark. Ct. App. 1995) (noting that while guideline calculation is presumed to be the correct amount and is the starting point in

determining the amount of child support, court may exercise its equitable discretion to adjust amount to account for the allocation to one spouse of the right to claim children as dependents for tax deduction).

## III.

¶ 21. Father also argues that the magistrate erroneously disregarded the final order and decree of divorce when it included the parties' respective child-care costs in performing the guideline calculation, thereby suggesting that father would be obligated to pay between 57.83% and 51.65% of the cost of child care for the parties' children pursuant to a new guideline calculation. Father argues that this violates the plain language of the stipulated final divorce order, which states: "The parties agree that each party shall bear costs for child care expenses for the children during those times that the children are with them pursuant to the contact schedule herein."

¶ 22. Mother responds with both a factual argument and a legal argument. The factual argument is that the relevant provision in the final order addresses which parent actually writes the check to the child-care provider, and does not purport to remove consideration of child-care costs from the guideline calculation. In support of this argument, mother points to the stipulated final child-support order, which was approved by the court at the same time as the final divorce order, and which includes the parties' respective child-care costs in the guideline calculation. The legal argument is that, stipulation notwithstanding, the magistrate was required to consider the child-care costs in the guideline calculation.

¶ 23. The magistrate did not directly address father's argument, though noted that the existing child-support order did take into account child-care costs. On appeal, the family division rested its affirmance on a legal basis, concluding that the magistrate was required to apply the guideline formula in calculating child support, and the statute relating to the guideline calculation requires consideration of qualifying child-care costs in calculating available income.

¶ 24. We need not reach the question of whether parties can, by stipulation, bypass the consideration of their respective qualifying child-care costs in a guideline calculation. See 15 V.S.A. § 655 (parental support obligation calculated based on total support obligation); *id.* § 653(9) (defining "total support obligation" as "the

sum of money determined by adding: (A) amounts derived from the support guideline appropriate to the parties' available income; (B) child care costs; and (C) extraordinary expenses."); *id.* § 653(2) (defining "child care costs" as "the actual child care costs reasonably incurred by a parent on behalf of the children due to employment or employment related education," excluding the amount of available subsidies or tax credits for child care).

¶ 25. In this case, the record does not support the contention that the parties intended such a stipulation. The stipulated final order states:

> The parties shall be bound by the provisions of the Child Support Order of approximate even date herewith, the terms of which are incorporated herein by reference. The parties agree that each party shall bear costs for child care expenses for the children during those times that the children are with them pursuant to the contact schedule herein.

The stipulated child-support order filed contemporaneously with this final divorce order includes consideration of the parties' respective child-care costs in the guideline calculation. In the face of this record, we cannot conclude that the parties clearly sought to stipulate that child-care costs would not be taken into account in the child-support guideline calculation.

¶ 26. Father also argues that the evidence was insufficient to substantiate the actual cost of child care as reported by mother and accepted by the magistrate. He raised this argument in his motion to reconsider before the magistrate, but did not raise it on appeal to the family division. In any event, the magistrate relied on mother's testimony as to the amount of her monthly child-care costs; an accompanying handwritten exhibit indicating that mother paid for forty-two weeks during the school year at $107 per week, and ten weeks during the summer at $161 per week; and an online registration sheet of the before- and after-school program corroborating the amount paid. This evidence was sufficient to support the magistrate's calculation of mother's child-care costs. *Kanaan*, 163 Vt. at 405, 659 A.2d at 131 ("[W]e will not disturb a trial court's findings of fact unless they are clearly erroneous"; that is, we will uphold the court's conclusions "as long as they are supported by adequate findings, which are in turn supported by

sufficient evidence in the record."). This is true even though mother did not provide receipts substantiating her testimony that she paid the child-care costs identified in her testimony. See *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."). The magistrate also did not err in declining to revisit the calculation of child-care costs on father's motion to reconsider based on mother's inconsistent reports concerning her child-care costs in various affidavits, or a discrepancy between the number of weeks she claimed to pay for before- and after-school care and the number of weeks reflected on the registration form she supplied the court. "The reason the trial court is granted such wide deference on review is that it is in a unique position to assess the credibility of the witnesses and the weight of the evidence presented." *Kanaan*, 163 Vt. at 405, 659 A.2d at 131.

## IV.

¶ 27. Father next argues that the magistrate erred in calculating his income for the purposes of performing a guideline calculation in connection with father's motion to modify. The magistrate found that father had been in the towing business for about seventeen years. During the parties' divorce, father filed for bankruptcy and his self-employed towing company closed. Shortly thereafter, father and his girlfriend (whom he subsequently married) formed a business partnership. She made a down payment on a tow truck, he provided the know-how, and the two opened ResQ Towing, a towing business. Father's wife owned sixty percent of the company because she made the down payment for the tow truck from her own funds before he married her, and was the one who would suffer a monetary loss if the business failed. In addition to his towing work, during the summertime father worked for Bundy's Sewer Service as a driver, and sometimes as a laborer. Father testified that his 2012 earnings from Bundy's through the hearing date were higher than they would be prospectively because he had been filling in for a regular Bundy's employee who had been out for a sustained family medical emergency. Father's income from these endeavors was very much in dispute.

¶ 28. In determining father's income, the trial court considered father's pay stubs from Bundy's, reflecting 2012 year-to-date

income through August 30, 2012 of $19,755, or a monthly income of $2469. Stating that the court did not want to speculate on the amount of income that father would be earning in the future from Bundy's, the magistrate accepted father's year-to-date earnings from Bundy's as reflective of his income from Bundy's. Based on the year-to-date pay stubs, the magistrate concluded that father's income from the local fire department was $63 per month. Finally, the magistrate tried to determine father's income from ResQ Towing. The magistrate concluded that ResQ Towing's profit-and-loss statement for 2012, through June 15, did not provide the best evidence of the company's net profits because it provided only a partial snapshot of the finances of the seasonal business, and it included some annual expenses which are due at the beginning of the year. Instead, the magistrate relied on the company's 2011 tax return, which reflected a full year for the business partnership. On that basis, the magistrate concluded that father's earnings from ResQ Towing were $536 per month. Counting these three sources, the magistrate concluded that father's monthly taxable gross income was $3069.[3]

¶ 29. Father filed a motion for reconsideration, arguing that in 2011 he did his work for Bundy's through ResQ Towing as a subcontractor, and thus the 2011 ResQ Towing tax return reflected the Bundy's earnings. But in 2012, father was paid as a Bundy's employee, as reflected in the pay stubs the magistrate relied upon in calculating his earnings from Bundy's. By relying on ResQ Towing's 2011 earnings in calculating father's current earnings from that company, when the 2011 earnings included the work father did that year for Bundy's, the magistrate essentially double-counted the Bundy's earnings — first as direct wages from Bundy's, and second as a component of his ResQ Towing earnings.

¶ 30. In response to father's motion, the magistrate declined to reduce father's calculated income on account of the allegedly double-counted income because father offered no documentation indicating the extent of ResQ Towing's 2011 income attributable to his work at Bundy's. The court explained:

> As a subcontractor, [father] would have received [an IRS Form] 1099 from Bundy's indicating what they had paid.

---

[3] The magistrate also included in the guideline calculation, as an adjustment to monthly after-tax income, $502 in monthly untaxed income from VA disability compensation and a VA educational stipend. This component of father's income is not at issue on appeal.

This information was not provided to the court along with the 2011 tax return. So although [father] may have been correct in asserting that there were some Bundy's payments in the total [for 2011], he would have been the only one who would have had the information and he neither brought it to the original hearing in this matter nor the reconsideration hearing. [Father's] financial affidavit . . . (dated 05/24/12) has no schedule C or other documentation reflecting . . . self-employment or subcontractor [status]. The 2011 has no such information either.

¶ 31. The magistrate noted that father's wife had testified that most of the ResQ Towing business came from the Vermont State Police, and did not offer any testimony as to what part of the 2011 ResQ Towing receipts were connected with father's work for Bundy's as a subcontractor. The magistrate concluded, "What is clear is that the [2011 ResQ Towing] receipts were not solely related to the defendant's subcontracting, if at all."

¶ 32. On appeal, the family division affirmed the magistrate's finding. The family division noted that father bore the burden of establishing the grounds for modifying the child-support order, including establishing his income, and could have produced a 1099 from Bundy's to ResQ Towing to support his position. In the absence of such information, the family division found that the magistrate "made findings about [father's] income based on the evidence presented," and that there was no error.

¶ 33. On appeal to this Court, father renews his argument. He adds that in reconsidering his motion to modify the magistrate made it clear that the reconsideration was on the record only, and argues, "If we had known new evidence would be allowed . . . , we would have submitted a lot of documentation to show . . . the 2011 1099 made to ResQ Towing." Father states that the fact that ResQ Towing subcontracted with Bundy's in 2011 was never seriously in doubt, pointing to his own testimony and the testimony of his present wife (Bundy's bookkeeper) as to that fact, as well as to an affidavit by mother alluding to father's subcontracting income from Bundy's. Father also points to 4 V.S.A. § 466(d), which provides that the family-division magistrate "shall assist the parties in developing relevant and reliable evidence" and 15 V.S.A. § 662(a), which provides that "[u]pon request of either party, or the court, the other party shall furnish information documenting the affidavit [of income and assets]." Father states that had the

magistrate or mother "requested the evidence or even seriously questioned" whether ResQ Towing contracted with Bundy's in 2011, he "would have produced evidence to back . . . up" the claim.

¶ 34. ■■ ■■ We find no error in the magistrate's findings based on the evidence presented. While father argues in his brief that "there is no credible evidence to support the finding that ResQ Towing did *not* subcontract to Bundy's in 2011" (emphasis added), it is father, as the party seeking a modification, who had the burden to "show[ ] . . . a real, substantial and unanticipated change of circumstances." 15 V.S.A. § 660(a)(1). Moreover, the magistrate did not conclude that ResQ Towing did not subcontract to Bundy's in 2011; instead, the magistrate concluded that the record did not support father's contention.

¶ 35. Father also contends that the magistrate erred in relying on the 2011 ResQ Towing tax return, rather than the company's 2012 profit-and-loss statement through June 15. Instead of declining to rely on the 2012 figures, he argues, the magistrate should have taken out the front-loaded expenses (i.e., the truck purchase and insurance) and relied on the remaining data in the P&L in determining his 2012 ResQ Towing income. He further argues that the magistrate failed to consider the seasonal nature of his work at Bundy's, and the special circumstances that made his 2012 Bundy's earnings atypically high.

¶ 36. ■■ We find no error in the magistrate's calculation. The fact that the magistrate could have analyzed father's income a different way is not a ground for reversal. The magistrate's conclusions are supported by adequate findings, which are in turn supported by sufficient evidence in the record. *Kanaan*, 163 Vt. at 405, 659 A.2d at 131. The choice among competing methods for determining father's income — such as relying on 2012 year-to-date profit-and-loss information or the prior full year's reported profit and loss — are squarely within the magistrate's discretion, as is the weighing the persuasiveness of the evidence. See *Cabot*, 166 Vt. at 497, 697 A.2d at 652. Insofar as father argues that his 2012 year-to-date earnings from Bundy's were a poor predictor of his future earnings, he remains free to file a motion to modify if his income drops. Particularly given the broad discretion entrusted

to the factfinder to weigh the evidence and make findings, we find no error.[4]

*Affirmed.*

---

[4] Father argues that the magistrate wrongly stated that the child-support order of August 12, 2009 does not include an additional-dependent adjustment. We do not disagree that the magistrate's statement was incorrect. However, the magistrate's 2012 calculation in its decision on father's motion to modify did in fact include the additional dependent, so the magistrate's misstatement had no impact on the calculations or result. Father further criticizes the delay in the magistrate's rulings in this case. The lengthy delays in this case were regrettable, but do not affect the validity of the magistrate's factual and legal conclusions.