2015 VT 72












Merchant v. Merchant (2014-057)

 

2015 VT 72

 

[Filed 15-May-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 72
 
 


 


 
 
 No. 2014-057
 
 


 


 
 
 Sheila Merchant
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Addison Unit,
 
 
 
 
  
 
 
 Family Division
 
 
 
 
  
 
 
  
 
 
 
 
 Eric Merchant
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Robert
 A. Mello, J.
 
 
 
 
  
 
 


Cynthia L. Broadfoot
of Broadfoot, Attorneys at Law, Burlington, for
Plaintiff-Appellee.

 

Eric Merchant, Pro Se, Jericho,
Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
ROBINSON, J.   In this case, father Eric Merchant
challenges the findings and conclusions of the family-division magistrate, as
affirmed by the Superior Court, Family Division, Addison Unit, denying his 2011
motion to modify a 2009 child-support order governing support of the two
children he had with mother Sheila Merchant.  We affirm.

¶ 2.            
Father and mother married in 2000.  They subsequently had two
children.  The parties separated in 2008, and in August 2009 the superior
court issued a stipulated final divorce order providing for shared physical
rights and responsibilities for their children and a contact schedule
allocating fifty percent of the children’s time to each parent.  The
stipulated order provided that each party would bear the cost of child-care expenses
for the children during those times that the children were with them pursuant to the contact schedule.  It further provided
that mother would be entitled to claim the minor children as dependents for
state and federal income-tax purposes.  The child-support-obligation
guideline calculation was $112.52 per month from father to mother.  This
guideline calculation, which was attached to the final child-support order,
took into account the parents’ respective qualifying child-care costs.
 Father agreed to an upward deviation from the guideline amount, to $200
per month plus $43 per month in arrears, which would automatically rise to $243
per month when the arrears of $1852 were paid (after forty-three months).

¶ 3.            
In November 2011, father filed a motion to modify child support. 
After a contested hearing in September 2012, the magistrate dismissed father’s
motion to modify on the ground that father had failed to show a real,
substantial, and unanticipated change of circumstances—a statutory predicate to
modification of a child-support order.  See 15 V.S.A. § 660(a).[1]  In reaching this conclusion, the
magistrate calculated the current child-support obligation that would be due
based on the parties’ respective incomes and other relevant inputs in
child-support guideline formula.  The magistrate concluded that father’s
current child-support obligation would be $256.43 per month.  Because this
obligation did not differ from the existing child-support obligation by more
than ten percent in a downward direction, the magistrate concluded that father
had failed to show a real, substantial, and unanticipated change of
circumstances.  Father disputed several elements of the magistrate’s
guideline calculation.

¶ 4.            
Father filed a motion to reconsider, arguing among other things that the
magistrate miscalculated his wages by double-counting a component of his
income; improperly relied on a guideline calculation that assumed that the
parents were equally sharing the dependent tax exemptions for the children,
when in fact they were not; and improperly accounted for the parties’
child-care costs when the underlying divorce order provided that each party
would bear his or her own child-care costs.  He also noted an error in the
magistrate’s decision with respect to whether the underlying child-support
order included an additional-dependent deduction.  In a November 2013
order, the magistrate reaffirmed the dismissal of father’s motion to modify.

¶ 5.            
Father appealed to the family division.  See 4 V.S.A. § 465;
V.R.F.P. 8(g).  Father renewed his arguments that the magistrate
incorrectly established the guideline amount by (1) incorrectly
calculating his monthly income, imputing a higher income than was actually the
case; (2) relying on a guideline calculation that equally divided credit
for the tax exemption for dependent children between father and mother, despite
the final order’s allocation of the right to claim such tax exemption solely to
mother; and (3) including child-care costs, even though the final order
provided that “[t]he parties agree that each party shall bear costs for child
care expenses for the children during those times that the children are with
them pursuant to the contact schedule herein.”  These are the only
arguments father raised in his appeal.

¶ 6.            
In January 2014, the family division affirmed.  It concluded that
the magistrate’s determination of father’s income was supported by the evidence
and within the magistrate’s discretion.  With respect to the role of tax
exemptions in the guideline calculation, the court held that statute requires
that the child-support calculation assume that each parent takes an equal share
of the exemptions attributable to the children subject to the order, regardless
of the parents’ actual allocation of those exemptions.  With respect to
the child-care costs, the family division ruled that the magistrate’s
consideration of the parties’ qualifying child-care costs was consistent with
the requirement that child support be calculated according to the guideline
formula, which requires consideration of qualifying child-care costs in
determining the parties’ available income, and ultimately the child-support
obligation.  Father appealed to this Court.

¶ 7.            
“[W]e will not disturb a trial court’s findings of fact unless they are
clearly erroneous”; that is, we will uphold the court’s conclusions “as long as
they are supported by adequate findings, which are in turn supported by
sufficient evidence in the record.”  Kanaan v. Kanaan, 163 Vt. 402, 405, 659
A.2d 128, 131 (1995).  We review the legal conclusions of the
magistrate and the family division de novo.  Coyle v.
Coyle, 2007 VT 21, ¶ 5, 181 Vt. 583, 925 A.2d 996 (mem.).

¶
8.            
The court may modify a child-support order upon a showing of a real,
substantial, and unanticipated change of circumstances.  15 V.S.A.
§ 660(a)(1).  A child-support order that
varies more than ten percent from the amounts required to be paid under the support
guideline is considered to be a real, substantial, and unanticipated change of
circumstances.  Id. § 660(b).

I.

¶
9.            
On appeal, father makes several new arguments challenging the
magistrate’s, and the family division’s, application
of this requirement.  First, he argues that under this provision, the
court automatically had jurisdiction to modify the order because the 2009 order
was for $200 per month, while the 2009 guideline amount was $112.52 per month.
 Citing our decision in Grimes v. Grimes, 159 Vt. 399, 621 A.2d 211
(1992), father argues that the ten-percent differential between the
child-support guideline calculation and the child-support obligation ordered
should be calculated as of the time the original order was issued, rather than
at the time of the proposed modification.  He essentially argues that
because the deviation built into the underlying child-support order in this
case was big enough to allow for modification immediately following that order,
the magistrate had continuing authority to modify the order—even if subsequent
changes in the parties’ respective finances reduced the gap between the
guideline calculation and the child-support order to less than ten percent.

¶
10.        
Second, father argues that he did not have to show that the
child-support order varied more than ten percent from the guideline-support
amount pursuant to § 660(b) because his receipt of means-tested
public-assistance benefits constituted a change of circumstances pursuant to
§ 660(c)(1).  In support of this argument,
he cites his attendance at school through the Veterans Affairs Vocational
Rehabilitation program, his receipt of a Pell Grant, the children’s entitlement
to Medicaid, and his receipt of VA disability benefits.

¶
11.        
Father did not make either of these arguments to the magistrate, nor to
the trial court.  We decline to address these contentions now because
father has raised them for the first time on appeal.  See Begin v.
Benoit, 2006 VT 130, ¶ 7, 181 Vt. 553, 915 A.2d 786
(mem.) (“Where an aggrieved party fails to make a
specific objection in the trial court, this Court need not address the issue on
appeal.”); Osmanagic v. Osmanagic, 2005 VT 37, ¶ 10, 178 Vt. 538, 872 A.2d
897 (mem.) (noting that issues not briefed at trial
court and raised for first time on appeal will not be considered by this Court).[2]

II. 


 

¶ 12.         Father
also argues that the trial court erred in failing to consider, when calculating
the child-support guideline amount, that the parties’ agreement allocated the
right to claim the tax exemptions for their minor children to mother.
 Because the guideline calculation assumes that the tax exemptions are
divided evenly between the parties, the calculation overestimated father’s
available income (because it imputed to him a tax exemption that he was not
actually eligible to take) and underestimated mother’s available income
(because it did not account for the fact that she took both exemptions
pursuant to the terms of the final divorce order).  He contends that the
magistrate should have done a “manual” guideline calculation that accounted for
the reality of the parties’ allocation of the tax exemptions.

¶ 13.         The
child-support guideline formula was developed by the Agency of Human Services
in response to the Legislature’s directive.  15 V.S.A. § 654 (“The
secretary of human services shall prescribe by rule a guideline for child
support which reflects the percent of combined available income which parents
living in the same household in Vermont ordinarily spend on their
children.”).  The amount of child support determined under the guideline
“shall be presumed to be the total support obligation of parents.”  Id.

¶ 14.         Although
the Legislature delegated authority for developing the guideline formula to the
Agency of Human Services, it established a statutory framework for the
formula.  One of the building blocks of the child-support-guideline
calculation is the available income of the child’s parents.  The Legislature
has defined “available income” to mean “gross income” minus spousal support
owed, preexisting child-support obligations, health-insurance costs, FICA
taxes, and state and federal income taxes.  Id.
§ 653(1).  The statute prescribes the manner in which state
and federal income taxes are to be calculated:

[F]or
parents who share custody as defined in section 657 of this title, using the
standard deduction, head of household filing status and one exemption for the
parent and an equal share of the exemptions attributable to the children who
are the subject of the order, plus earned income tax credits if
applicable . . . .

 

Id.
§ 653(1)(D)(iii) (emphasis added).

 

¶ 15.         The
assumption that father is eligible to take a dependent exemption for one of the
children is not, as father suggests, merely a default assumption in the
computer program that implements the guideline.  Rather, the assumption is
“baked into” the statute governing the calculation of child support.  In
order to satisfy father’s request that his available income be calculated with
reference to the parties’ actual allocation of the tax exemptions for their
dependent children, a magistrate would have had to ignore the statutory
definition of “available income” promulgated by the Legislature.  The
question then is whether, in calculating child support pursuant to the
guideline, the magistrate must, or even can substitute a calculation of
the parents’ respective available incomes that reflects their actual practice
with respect to the dependent exemptions for the children.

¶ 16.         We
have touched on this issue once, without resolving it.  In Adamson v.
Dodge, we described the process for calculating a child-support obligation
pursuant to the guideline.  174 Vt. 311, 318, 816 A.2d
455, 462 (2002).  In that case, the final divorce order allocated
all four dependent exemptions to the non-custodial father.  In a footnote,
we wrote:

[U]nder § 653, the amount of
state and federal taxes to be subtracted from gross income in order to determine
a parent's available income must be calculated based on certain assumptions
rather than on actual taxes paid.  For purposes of determining available
income under § 653, a noncustodial parent such as father in this case is
supposed to calculate state and federal income taxes using the standard
deduction, single filing status, and one exemption.  15 V.S.A.
§ 653(1)(D)(ii).  No provision is made for a
situation where, as here, the parties have agreed by stipulation to allocate
the tax exemptions for dependents to the noncustodial parent. . . .
On remand, father is free to argue that a guidelines calculation should be made
based on the money he actually pays in taxes under the allocation of tax
exemptions that has been agreed upon in this case.

 

Id. at 318 n.2, 816 A.2d at 462 n.2.  Although this Court recognized that the
amount of state and federal taxes to be subtracted from gross income were to be
based on certain assumptions, rather than taxes actually paid, we also
recognized that the assumptions did not match the actual circumstances of that
case and left the door open to an argument that the guideline calculation
should be adjusted accordingly.

¶ 17.         With
the issue squarely before us now, we conclude that the magistrate did not err
in declining to perform the alternate calculation advocated by father.  We
reach this conclusion because the terms of the statute are clear and
unambiguous.  Cardiff v. Ellinwood, 2007 VT 88,
¶ 7, 182 Vt. 602, 938 A.2d 1226 (mem.) (“If legislative intent can
be derived from the plain language of a statute alone, our task is normally at
an end.” (quotation omitted)).

¶ 18.         We
recognize that application of the statute according to its plain language leads
to anomalous results in cases like this.  This is arguably at odds with
the Legislature’s goal of ensuring that at either of these jointly
custodial parents’ homes, the minor children are able to enjoy the standard of
living they would have enjoyed had the parents remained married at either
parent’s home.  15 V.S.A. § 650 (“The legislature further finds and
declares as public policy that . . . child support orders should
reflect the true costs of raising children and approximate insofar as possible
the standard of living the child would have enjoyed had the family remained
intact.”); id. § 657(a) (“When each parent exercises physical
custody for 30 percent or more of a calendar year, the total child support
obligation shall be increased by 50 percent to reflect the additional costs of
maintaining two households.”); see also LaMothe
v. LeBlanc, 2013 VT 21, ¶ 27, 193 Vt. 399, 70 A.3d 977 (“In a shared-custody-child-support environment, both
parents are presumed to be maintaining households and providing support for the
child.”); Grimes, 159 Vt. at 406, 621 A.2d at 214 (“A clearly excessive child support order may lead, as here, to collection difficulties
and periodic returns to court.”).

¶ 19.        
Nonetheless, we conclude that the Legislature could have intended
to simplify the process of calculating child-support obligations pursuant to
the guideline formula by imposing certain assumptions about the allocation of
dependent exemptions rather than requiring the magistrate to calculate
available income on the basis of inputs varying from case to case.  Cf. Vill. of Lyndonville v.
Town of Burke, 146 Vt. 435, 437, 505 A.2d 1207, 1209 (1985) (“The primary purpose of [the statute] is to provide for the
listing of real estate for taxation purposes.  It seems reasonable to
conclude that the Legislature intended to make the carrying out of this purpose as simple and easy as possible for the listers.”
(quotation omitted)).  If we are mistaken, and
the Legislature intended for “available income” to be defined for the purposes
of a guideline calculation in a way that takes into account the parties’ actual
allocation of the dependent-child tax exemptions, it should amend the
statute.  See Cardiff, 2007 VT 88, ¶ 7 (“One reason for our
primary reliance on plain language in this context is that the Legislature can change the
wording to reflect its true intent with relative ease”) (quotation
omitted).  In the meantime, if parties to a divorce stipulate to an
allocation of the dependent-child tax exemptions that differs from the assumptions
embedded in the child-support statute, they are on notice that their agreement
may have a distorting impact on the resulting child-support calculation under
the guideline.

¶ 20.         The
harsh anomalousness of this statute as applied in a case like this is tempered
by the availability of a deviation from the child-support guideline.  See
15 V.S.A. § 659(a) (“If, after consideration of [relevant] factors, the
court finds that application of the guidelines is unfair to the child or to any
of the parties, the court may adjust the amount of child support.”).  The
possibility of a deviation does not help father in this case in connection with
his motion to modify, however, because he fails to overcome the threshold
“changed circumstances” requirement.  In general, though, the impact of a
mismatch between the statutory assumptions about who is eligible to take
dependent-child exemptions and the parties’ actual allocation is a proper
consideration in the deviation analysis.  See, e.g., Fontenot v.
Fontenot, 898 S.W.2d 55, 55-57 (Ark. Ct. App. 1995) (noting that while
guideline calculation is presumed to be the correct amount and is the starting
point in determining the amount of child support, court may exercise its
equitable discretion to adjust amount to account for the allocation to one
spouse of the right to claim children as dependents for tax deduction).

III.

 

¶ 21.         Father
also argues that the magistrate erroneously disregarded the final order and
decree of divorce when it included the parties’ respective child-care costs in
performing the guideline calculation, thereby suggesting that father would be
obligated to pay between 57.83% and 51.65% of the cost of child care for the
parties’ children pursuant to a new guideline calculation.  Father argues
that this violates the plain language of the stipulated final divorce order,
which states: “The parties agree that each party shall bear costs for child
care expenses for the children during those times that the children are with
them pursuant to the contact schedule herein.”

¶ 22.         Mother
responds with both a factual argument and a legal argument.  The factual
argument is that the relevant provision in the final order addresses which parent
actually writes the check to the child-care provider, and does not purport to
remove consideration of child-care costs from the guideline calculation. 
In support of this argument, mother points to the stipulated final
child-support order, which was approved by the court at the same time as the
final divorce order, and which includes the parties’ respective child-care
costs in the guideline calculation.  The legal argument is that,
stipulation notwithstanding, the magistrate was required to consider the child-care
costs in the guideline calculation.

¶ 23.         The
magistrate did not directly address father’s argument, though noted that the
existing child-support order did take into account child-care costs.  On
appeal, the family division rested its affirmance on a legal basis, concluding
that the magistrate was required to apply the guideline formula in calculating
child support, and the statute relating to the guideline calculation requires
consideration of qualifying child-care costs in calculating available income.

¶ 24.         We
need not reach the question of whether parties can, by stipulation, bypass the
consideration of their respective qualifying child-care costs in a guideline
calculation. See 15 V.S.A. § 655 (parental support obligation calculated
based on total support obligation); id. § 653(9) (defining
“total support obligation” as “the sum of money determined by adding:
(A) amounts derived from the support guideline appropriate to the parties’
available income; (B) child care costs; and (C) extraordinary
expenses”); id. § 653(2) (defining “child care costs” as “the
actual child care costs reasonably incurred by a parent on behalf of the
children due to employment or employment related education,” excluding the
amount of available subsidies or tax credits for child care).

¶ 25.         In
this case, the record does not support the contention that the parties intended
such a stipulation.  The stipulated final order states:

The
parties shall be bound by the provisions of the Child Support Order of
approximate even date herewith, the terms of which are incorporated herein by
reference.  The parties agree that each party shall bear costs for child
care expenses for the children during those times that the children are with
them pursuant to the contact schedule herein.

 

The stipulated child-support order
filed contemporaneously with this final divorce order includes consideration of
the parties’ respective child-care costs in the guideline calculation.  In
the face of this record, we cannot conclude that the parties clearly sought to
stipulate that child-care costs would not be taken into account in the
child-support guideline calculation.

¶ 26.        
Father also argues that the evidence was insufficient to substantiate
the actual cost of child care as reported by mother and accepted by the
magistrate.  He raised this argument in his motion to reconsider before
the magistrate, but did not raise it on appeal to the family division.  In
any event, the magistrate relied on mother’s testimony as to the amount of her
monthly child-care costs; an accompanying handwritten exhibit indicating that
mother paid for forty-two weeks during the school year at $107 per week, and
ten weeks during the summer at $161 per week; and an online registration sheet
of the before- and after-school program corroborating the amount paid. 
This evidence was sufficient to support the magistrate’s calculation of
mother’s child-care costs.  Kanaan, 163
Vt. at 405, 659 A.2d at 131 (“[W]e will not disturb a trial court’s findings of
fact unless they are clearly erroneous”; that is, we will uphold the court’s
conclusions “as long as they are supported by adequate findings, which are in
turn supported by sufficient evidence in the record.”).  This is true even
though mother did not provide receipts substantiating her testimony that she
paid the child-care costs identified in her testimony.  See Cabot v.
Cabot, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) (“As the trier of fact,
it [is] the province of the trial court to determine the credibility of the
witnesses and weigh the persuasiveness of the evidence.”).  The magistrate
also did not err in declining to revisit the calculation of child-care costs on
father’s motion to reconsider based on mother’s inconsistent reports concerning
her child-care costs in various affidavits, or a discrepancy between the number
of weeks she claimed to pay for before- and after-school care and the number of
weeks reflected on the registration form she supplied the court.  “The
reason the trial court is granted such wide deference on review is that it is
in a unique position to assess the credibility of the witnesses and the weight
of the evidence presented.”  Kanaan, 163
Vt. at 405, 659 A.2d at 131.

IV.

 

¶ 27.         Father
next argues that the magistrate erred in calculating his income for the
purposes of performing a guideline calculation in connection with father’s
motion to modify.  The magistrate found that father had been in the towing
business for about seventeen years.  During the parties’ divorce, father
filed for bankruptcy and his self-employed towing company closed.  Shortly
thereafter, father and his girlfriend (whom he subsequently married) formed a
business partnership.  She made a down payment on a tow truck, he provided
the know-how, and the two opened ResQ Towing, a
towing business.  Father’s wife owned sixty percent of the company because
she made the down payment for the tow truck from her own funds before he
married her, and was the one who would suffer a monetary loss if the business
failed.  In addition to his towing work, during the summertime father
worked for Bundy’s Sewer Service as a driver, and sometimes as a laborer. 
Father testified that his 2012 earnings from Bundy’s through the hearing date
were higher than they would be prospectively because he had been filling in for
a regular Bundy’s employee who had been out for a sustained family medical
emergency.  Father’s income from these endeavors was very much in dispute.

¶ 28.         In
determining father’s income, the trial court considered father’s pay stubs from
Bundy’s, reflecting 2012 year-to-date income through August 30, 2012 of
$19,755, or a monthly income of $2469.  Stating that the court did not
want to speculate on the amount of income that  father would be earning in
the future from Bundy’s, the magistrate accepted father’s year-to-date earnings
from Bundy’s as reflective of his income from Bundy’s.  Based on the
year-to-date pay stubs, the magistrate concluded that father’s income from the
local fire department was $63 per month.  Finally, the magistrate tried to
determine father’s income from ResQ Towing.  The
magistrate concluded that ResQ Towing’s
profit-and-loss statement for 2012, through June 15, did not provide the best
evidence of the company’s net profits because it provided only a partial
snapshot of the finances of the seasonal business, and it included some annual
expenses which are due at the beginning of the year.  Instead, the
magistrate relied on the company’s 2011 tax return, which reflected a full year
for the business partnership.  On that basis, the magistrate concluded
that father’s earnings from ResQ Towing were $536 per
month.  Counting these three sources, the magistrate concluded that
father’s monthly taxable gross income was $3069.[3]

¶ 29.         Father
filed a motion for reconsideration, arguing that in 2011, he did his work for
Bundy’s through ResQ Towing as a subcontractor, and
thus the 2011 ResQ Towing tax return reflected the
Bundy’s earnings.  But in 2012, father was paid as a Bundy’s employee, as
reflected in the pay stubs the magistrate relied upon in calculating his
earnings from Bundy’s.  By relying on ResQ
Towing’s 2011 earnings in calculating father’s current earnings from that
company, when the 2011 earnings included the work father did that year for
Bundy’s, the magistrate essentially double-counted the Bundy’s earnings—first
as direct wages from Bundy’s, and second as a component of his ResQ Towing earnings.

¶ 30.          In
response to father’s motion, the magistrate declined to reduce father’s
calculated income on account of the allegedly double-counted income because
father offered no documentation indicating the extent of ResQ
Towing’s 2011 income attributable to his work at Bundy’s.  The court explained:

As
a subcontractor, [father] would have received [an IRS Form] 1099 from Bundy’s
indicating what they had paid.  This information was not provided to the
court along with the 2011 tax return.  So although [father] may have been
correct in asserting that there were some Bundy’s payments in the total [for
2011], he would have been the only one who would have had the information and
he neither brought it to the original hearing in this matter nor the
reconsideration hearing.  [Father’s] financial affidavit
. . . (dated 05/24/12) has no schedule C or other
documentation reflecting . . . self-employment or subcontractor
[status].  The 2011 has no such information either.

 

¶ 31.         The
magistrate noted that father’s wife had testified that most of the ResQ Towing business came from the Vermont State Police,
and did not offer any testimony as to what part of the 2011 ResQ
Towing receipts were connected with father’s work for Bundy’s as a
subcontractor.  The magistrate concluded, “What is clear is that the [2011
ResQ Towing] receipts were not solely related to the
defendant’s subcontracting, if at all.”

¶ 32.         On
appeal, the family division affirmed the magistrate’s finding.  The family
division noted that father bore the burden of establishing the grounds for
modifying the child-support order, including establishing his income, and could
have produced a 1099 from Bundy’s to ResQ Towing to
support his position.  In the absence of such information, the family
division found that the magistrate “made findings about [father’s] income based
on the evidence presented,” and that there was no error.

¶ 33.         On
appeal to this Court, father renews his argument.  He adds that in
reconsidering his motion to modify the magistrate made it clear that the reconsideration
was on the record only, and argues, “If we had known new evidence would be allowed . . ., we would have submitted a lot of
documentation to show . . . the 2011 1099 made to ResQ
Towing.”  Father states that the fact that ResQ
Towing subcontracted with Bundy’s in 2011 was never seriously in doubt,
pointing to his own testimony and the testimony of his present wife (Bundy’s
bookkeeper) as to that fact, as well as to an affidavit by mother alluding to
father’s subcontracting income from Bundy’s.  Father also points to 4
V.S.A. § 466(d), which provides that the family-division magistrate “shall
assist the parties in developing relevant and reliable evidence” and 15 V.S.A.
§ 662(a), which provides that “[u]pon request of
either party, or the court, the other party shall furnish information
documenting the affidavit [of income and assets].”  Father states that had
the magistrate or mother “requested the evidence or even seriously questioned”
whether ResQ Towing contracted with Bundy’s in 2011,
he “would have produced evidence to back . . .
up” the claim.

¶ 34.         We
find no error in the magistrate’s findings based on the evidence
presented.  While father argues in his brief that “there is no credible
evidence to support the finding that ResQ Towing did not
subcontract to Bundy’s in 2011” (emphasis added), it is father, as the party
seeking a modification, who had the burden to “show[] . . . a real,
substantial and unanticipated change of circumstances.”  15 V.S.A. § 660.  Moreover, the magistrate did not
conclude that ResQ Towing did not subcontract to
Bundy’s in 2011; instead, the magistrate concluded that the record did not
support father’s contention.

¶ 35.         Father
also contends that the magistrate erred in relying on the 2011 ResQ Towing tax return, rather than the company’s 2012
profit-and-loss statement through June 15.  Instead of declining to rely
on the 2012 figures, he argues, the magistrate should have taken out the
front-loaded expenses (i.e., the truck purchase and insurance) and relied on
the remaining data in the P&L in determining his 2012 ResQ
Towing income.  He further argues that the magistrate failed to consider
the seasonal nature of his work at Bundy’s, and the special circumstances that
made his 2012 Bundy’s earnings atypically high.

¶ 36.         We
find no error in the magistrate’s calculation.  The fact that the
magistrate could have analyzed father’s income a different way is not a ground
for reversal.  The magistrate’s conclusions are supported by adequate
findings, which are in turn supported by sufficient evidence in the
record.  Kanaan, 163 Vt. at 405, 659 A.2d at 131.  The choice among competing methods
for determining father’s income—such as relying on 2012 year-to-date
profit-and-loss information or the prior full year’s reported profit and
loss—are squarely within the magistrate’s discretion, as is the weighing the
persuasiveness of the evidence.  See Cabot, 166 Vt. at 497, 697 A.2d at 652.  Insofar as father argues that his
2012 year-to-date earnings from Bundy’s were a poor predictor of his future
earnings, he remains free to file a motion to modify if his income drops. 
Particularly given the broad discretion entrusted to the factfinder to weigh
the evidence and make findings, we find no error.[4]

Affirmed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














[1]  15 V.S.A. § 660(a)(1) provides an
alternate path to modification allowing the court to waive the requirement of a
real, substantial, and unanticipated change of circumstances if the order has
not been modified for at least three years.  Father filed the motion at
issue in this appeal less than three years from the date of the 2009
child-support order, so this path was not available to him.





[2]  To the extent father argues that the
magistrate erred in focusing on the direction of the variance between
the new guideline calculation and the child-support order, since the
magistrate’s guideline calculation did vary from the child-support order by
more than ten percent in an upward direction, and § 660(b) does not
limit the direction of the variance that can support a modification, he
likewise failed to preserve this argument.





[3]
 The magistrate also included in the guideline calculation, as an
adjustment to monthly after-tax income, $502 in monthly untaxed income from VA
disability compensation and a VA educational stipend.  This component of
father’s income is not at issue on appeal.





[4]
 Father argues that the magistrate wrongly stated that the child-support
order of August 12, 2009 does not include an additional-dependent
adjustment.  We do not disagree that the magistrate’s statement was
incorrect.  However, the magistrate’s 2012 calculation in its decision on
father’s motion to modify did in fact include the additional dependent, so the
magistrate’s misstatement had no impact on the calculations or result. 
Father further criticizes the delay in the magistrate’s rulings in this
case.  The lengthy delays in this case were regrettable, but do not affect
the validity of the magistrate’s factual and legal conclusions.