VERMONT SUPREME COURT                  Case No.     25-AP-087
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

Catherine Hutchings v. Justin Bramhall\*    }   APPEALED FROM:
                                         }   Superior Court, Windham Unit,
                                         }   Family Division
                                         }   CASE NO. 20-DM-00302
                                           Trial Judge: Elizabeth D. Mann

In the above-entitled cause, the Clerk will enter:

Father appeals from a family division order affirming a magistrate's denial of his motions to modify a final child-support order and allocate federal child tax credits among the parties. We affirm.

### I. Background

The parties were divorced in June 2021. Under their stipulated final divorce order, they share legal and physical parental rights and responsibilities for their two minor children. A final child-support order was also issued based on the parties' stipulation. That order reflected that the children were to spend 42.7% of their time with father and 57.3% of their time with mother. The parties agreed to a downward deviation from the child-support guideline, which called for father to make monthly payments of $279.35 to mother. The order imposed a zero-support obligation on father and provided: "[Mother] is receiving 80% of the children's tuition paid at the Grammar School as a benefit of employment. [Father] agrees to pay the additional 20%. This agreement is in the best interests of the children."

In July 2023, father moved to modify the child-support order. In support of this request, he asserted that the parties' incomes had changed and the amount payable under the guidelines varied more than 10% from the current amount ordered. Father also requested that the court allocate federal child tax credits among the parties. The magistrate issued an order directing father to file the latter request as a separate motion. He did so. In that motion, father alleged that at the time of their divorce, the parties entered a verbal agreement to evenly share the federal tax credits for their two children—but that, being self-represented at the time, he did not understand that this

agreement "should have been incorporated into the stipulated final child support order." Father further indicated that mother had refused to honor the agreement and proceeded to claim the tax credits for both children in 2021 and 2022. Father asked that the court therefore allocate him the tax credits for both children for the next two tax years as compensation, and direct that the exemptions be divided evenly going forward.[1]

Mother opposed both motions. She also filed a motion requesting that the court deviate from the child-support guideline under 15 V.S.A. § 659 and maintain the terms of the existing order—under which father had no obligation to pay child support but was required to pay the portion of the children's tuition not covered by mother's employment benefit.

The magistrate held a hearing on the pending post-judgment motions in December 2023 and May 2024. The court issued its written decision on the motions in October 2024. The order included the following findings of fact.

The parties' children have been enrolled in the Grammar School, an independent elementary school, since the parties moved to Vermont. Father learned of the school when they were considering the move and encouraged mother to apply to work there. She did so and was employed first as a long-term substitute and then as a second-grade teacher. As a benefit of mother's employment, the school remits 80% of the tuition cost for both of the parties' children.

During the parties' divorce, mother had an attorney and father was self-represented. As a result, he did not understand that any agreement regarding the allocation of child tax credits should have been incorporated into either the final divorce order or the final child-support order. Father asserted that, at the time, the parties had an informal agreement to divide the credits equally. Mother denied the existence of any such agreement. Since the divorce, she has claimed both children on her taxes.

Father's income has increased slightly since the final child-support order issued. He recently took a voluntary pay cut, presumably to focus more of his time and energy on developing his own farm. He co-owns the farm with his partner, who contributes $975 per month of her own income toward their household expenses.

Mother has received modest pay increases since the order issued. There are no other adults living with her who could contribute to her household expenses.

The parties share educational decision-making authority and have agreed to enroll the children in the Grammar School each year following the divorce. The children have excelled academically there, and both parents are actively involved in the school community.

Mother has continued working at the school in reliance on the parties' agreement. Because tuition costs $16,000 per child per year, mother's 80% tuition benefit is worth $25,600 per year.

---

[1] Father alleged that while the motions were pending, mother claimed the credits for both children in her 2023 taxes. He therefore adjusted his request for relief prior to the hearing, asking that the court allow him to claim the credits for the next three tax years and then order that the credits be divided equally going forward.

Father claims that he can no longer afford to pay 20% of the children's tuition. He applied for and received financial aid from the school during the 2023-2024 school year. At father's request, mother also assisted him by contributing $135 per month toward the portion of the tuition not covered by her employment benefit. Father's actual cost for the 2023-2024 school year was "less than clear."

The magistrate first considered whether there had been a real, substantial, and unanticipated change of circumstances sufficient to modify the order under 15 V.S.A. § 660. Father argued that this threshold was met because, under § 660(b), a child-support order "which varies more than ten percent from the amounts required to be paid under the support guideline, shall be considered a real, substantial, and unanticipated change of circumstances." The new guideline calculation called for father to pay $144.52 per month in child support. The magistrate explained that as he interpreted § 660(b), a party can seek modification based on a variation greater than 10% only if that change is "in the direction that would benefit the moving party." Because the existing order was a zero-support order and the new guideline calculation called for father to pay $144.52 per month, the magistrate reasoned that § 660(b) was not satisfied. The magistrate did not otherwise find any real, substantial, or unanticipated changes of circumstance sufficient to cross the modification threshold.

The magistrate went on to conclude, however, that even if there had been a change in circumstances sufficient to modify the final child-support order, he would hold that the new guideline amount was unfair to mother and the children and grant mother's request for a deviation under the § 659(a) factors. As detailed below, the magistrate analyzed each factor and held that even if the modification threshold were met, he would deviate to a zero-support award under which father remained responsible for 20% of the children's tuition.

Finally, the magistrate considered father's request for an order allocating child tax credits. He concluded that it was essentially a motion seeking relief from the final divorce and child-support orders under Vermont Rule of Civil Procedure 60(b) on grounds that they failed to allocate dependency exemptions among the parties, and that any such motion was time-barred. See V.R.C.P. 60(b) (requiring that motion for relief under Rule 60(b)(1), (2), or (3) must be filed "not more than one year" after judgment). The magistrate further held that father had not demonstrated a sufficient change of circumstances to warrant reallocation of the dependency exceptions because the children continued to reside primarily with mother and, as a result, she was within her rights under the Internal Revenue Code to claim both children on her taxes.

The magistrate therefore denied father's motions. Father appealed to the family division. See 4 V.S.A. § 465 (providing that appeal from magistrate decision is heard by family division). On appeal, father argued that the magistrate erred in: (1) concluding that the statutory modification threshold was not satisfied; (2) holding, in the alternative, that a deviation from the guideline amount to an award matching the terms of the final child-support order was warranted under 15 V.S.A. § 659; (3) construing his motion to allocate tax credits as a Rule 60(b) motion; and (4) failing to consider the actual allocation of those credits in its deviation analysis. Mother sought to affirm the magistrate's order and submitted supplemental evidence, an IRS publication pertaining to the allocation of child tax credits under federal law. See 4 V.S.A. § 465 (providing that while appeal from magistrate decision is generally "on the record," family division "shall hear additional evidence" upon parties' request).

3

In a February 2025 order, the family division affirmed the magistrate's decision. It concluded that the magistrate properly held that a deviation was warranted and, as a result, there was no need to reach father's argument that the magistrate erred in concluding the modification threshold was unmet. The family division further found no basis to disturb the magistrate's denial of father's motion to allocate tax credits.

Father appeals to this Court.

## II. Discussion

"Our review in this case is similar to that of the family division; it is based on the record before the magistrate" and the additional evidence admitted in the first appeal. Patnode v. Urette, 2015 VT 70, ¶ 6, 199 Vt. 306; 4 V.S.A. § 465. "We will affirm the magistrate's factual findings unless clearly erroneous and will uphold the magistrate's conclusions if reasonably supported by the findings." Stone v. Henneke, 2024 VT 26, ¶ 12, 219 Vt. 291 (quotation omitted). The legal conclusions drawn by the magistrate and the family division, however, are reviewed without deference. Merchant v. Merchant, 2015 VT 72, ¶ 7, 199 Vt. 406.

First, father renews his argument regarding the magistrate's conclusion that the modification threshold was not satisfied. He contends that the magistrate erred in concluding that § 660(b) allows a party to seek a modification based on a change of 10% or more only if that change benefits the moving party. He also claims that the magistrate erred in considering the value of his tuition payments in concluding that he had not otherwise demonstrated changed circumstances. In addition, he argues that the family division erred in concluding that it need not reach these arguments given its affirmance of the magistrate's deviation analysis.

The family division did not err in declining to reach father's challenges to the magistrate's § 660 analysis. Father argues that he was prejudiced by this analytical approach because the statute includes mandatory language providing that any variation greater than 10% "shall be considered a real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 660(b). We fail to see any prejudice. Although the magistrate concluded that the modification threshold was not satisfied, he also explained that even if the threshold was met, he would grant mother's request for a deviation to an award that matched the terms of the existing order. The family division correctly concluded that if father's challenge to the magistrate's deviation analysis was without merit, any error in the magistrate's § 660(b) analysis was necessarily harmless. V.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); see also, e.g., LaMothe v. LeBlanc, 2015 VT 78, ¶ 15, 199 Vt. 448 (concluding that even if magistrate erred in guidelines calculation, "[b]ecause we are upholding the magistrate's deviation ruling, which was based on the conclusion that it would be unfair to require mother to pay father any child support under the circumstances, any error in the guidelines calculations is harmless" and therefore declining to reach issue).

For the reasons set forth below, we agree that father has not identified any basis to disturb the magistrate's deviation analysis. Thus, like the family division, we do not reach father's challenge to the magistrate's conclusion that the modification threshold was unmet.

Section 659(a) of Title 15 "creates a rebuttable presumption that the amount reflected in the child-support guidelines is the amount of support needed by the children." Tetreault v. Coon,

4

167 Vt. 396, 405 (1998). On the request of a party, the court may deviate from the guideline amount if it "finds that application of the guidelines is unfair to the child or to any of the parties" after considering all relevant factors, including those enumerated at § 659(a). "The escape valve of § 659(a) must be applied in light of the purposes behind the guidelines statute":

> (1) to insure that child-support orders "reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the marriage not been dissolved," 15 V.S.A. § 650; (2) to standardize child-support orders to ensure more equitable treatment of parties in similarly situated cases by narrowing or eliminating judicial discretion; and (3) to increase the efficiency of child-support adjudication and increase the number of settlements due to the predictability of the award amounts.

Tetreault, 167 Vt. at 405.

Here, the magistrate found the following factors relevant: the financial resources of mother, as the custodial parent; the financial resources of father, as the noncustodial parent; the standard of living the children would have enjoyed had the parties' marital relationship not been discontinued; the physical and emotional condition of the children; the educational needs of the children; and inflation. 15 V.S.A. §§ 659(a)(2)-(7). The magistrate reasoned that, in comparison to mother, father had the additional financial resources of a partner capable of contributing to his household expenses. Father had also recently taken a voluntary pay cut. The children did not have any unusual needs. Though there were no ongoing extraordinary expenses for the children's educational needs, the standard of living the children enjoyed during the marriage was directly related to their attendance at the Grammar School. There was no evidence to suggest that inflation had disproportionately impacted either parent.

Section 659(a)(10) calls for the consideration of "[a]ny other factors the court finds relevant." On this point, the magistrate found it relevant that, at the time of the divorce, the parties negotiated an agreement to a zero-support order—a downward deviation from the guideline amount of $279.36—based on father's agreement to pay the portion of the children's tuition costs not covered by mother's tuition benefit. He further noted that mother had continued working at the school in reliance on this agreement, and that the parties and the children had benefitted from the arrangement.

Weighing all these considerations, the magistrate concluded that—in the event the modification threshold was satisfied—mother had met her burden of proving that the guideline amount would be unfair to her and the children, and it would therefore grant her request for a deviation to an order matching the existing child-support order. Father argues that the magistrate erred in this analysis for numerous reasons. We address each contention in turn.

Father first points to our decision in Coyle v. Coyle in support of his assertion that the magistrate misframed its deviation analysis by considering whether the terms of the initial child-support order still benefitted the children or the parties. No. 2007-380, 2008 WL 2793871 (Vt. Apr. 1, 2008) (unpub. mem.) [https://perma.cc/6FCS-2L8L]. Leaving aside that Coyle is an unpublished panel decision and therefore not controlling precedent, see V.R.A.P. 33.1(d), it does

not support father's argument. In Coyle, the parents initially agreed that the guideline amount was insufficient to support the children's needs, and the magistrate issued an order deviating upward from the guideline amount. The father later moved to modify, seeking to reduce his obligation to the guideline amount. The magistrate granted the motion, and we held that the magistrate did not err by not considering "why it was fair to discontinue the deviation from the guideline" because the question under § 659 was whether application of the new guideline amount would be unfair. Id. at *3.

Here, the magistrate considered whether the new guideline amount would be unfair and concluded that it would be. As a result, the magistrate had to determine what adjustment was appropriate. See 15 V.S.A. § 659(a) (providing that if court finds application of guidelines unfair, it "may adjust the amount of child support"). Nothing in Coyle suggests that the magistrate was precluded from considering evidence relating to the existing child-support order in doing so. 2008 WL 2793871, at *3.

It is true, as discussed above, that we require that § 659(a) be applied in light of the three purposes underlying the guidelines statute. Tetreault, 167 Vt. at 405. As father points out, we have recognized that "these purposes necessarily constrain the use of guideline deviation under § 659(a) and narrow the discretion that the section provides to the family court," because allowing the court "to consider every variation with respect to the needs of the children, the living situation or the expenses of the parents, would undermine the Legislature's intent in standardizing support awards." Id. But it does not necessarily follow that the magistrate erred in considering the parties' previous agreement, their performance of that agreement, and its benefits under § 659(a)(10). Because father does not adequately explain why doing so would undermine the purposes undergirding the statute, we do not further consider this argument. See In re S.B.L., 150 Vt. 294, 297 (1988) ("It is the burden of the appellant to demonstrate how the lower court erred warranting reversal."); see also In re Snyder Grp., Inc., 2020 VT 15, ¶ 26 n.10, 212 Vt. 168 (declining to address inadequately briefed argument).

Father next argues that the magistrate erred in considering the monetary value of mother's tuition benefit in connection with its assessment of her financial resources under § 659(a)(2). He contends that such analysis is barred by our decision in Kelly-Whitney v. Kelly-Whitney, 2011 VT 12, 189 Vt. 572 (mem.). In that case we held that a tuition benefit is not "gross income" for purposes of computing the child-support guideline. Id. ¶ 4; see also Mitchinson v. Mitchinson, 173 Vt. 483, 484 (2001) (mem.) (explaining that guidelines calculation is based on combined available income of parents, which means "gross income" less certain obligations and tax adjustments). Our analysis was based on the statutory definition of "gross income," which includes reimbursements or in-kind payments received by a parent in the course of employment " 'if they reduce personal living expenses.' " Kelly-Whitney, 2011 VT 12, ¶ 4 (quoting 15 V.S.A. § 653(5)(A)(ii)). Here, father does not challenge the magistrate's guidelines calculation—he argues that the magistrate erred in considering the value of mother's tuition benefit in connection with § 659(a)(2), "[t]he financial resources of the custodial parent." Because Kelly-Whitney is therefore entirely inapposite, we reject father's argument on this point.

As to the third factor, "[t]he standard of living the child would have enjoyed had the marital relationship not been discontinued," 15 V.S.A. § 659(a)(3), father contends that the magistrate erred in observing that, during the marriage, the children enjoyed the advantages of mother's tuition benefit. He suggests that because mother still has the tuition benefit, the children's standard

of living had not changed. But the children were able to enjoy the advantages of mother's tuition benefit during the marriage only because the parties were able to pay the 20% of the tuition not covered by the benefit. Father has not demonstrated that the court erred in its analysis of this factor.

Next, father argues that because the court found that the children did not have unusual or special needs or ongoing extraordinary educational expenses, its conclusion that father must continue paying 20% of the children's tuition was error. The sole support he identifies for this contention is Haser v. Graham, an unpublished panel decision. No. 2008-461, 2009 WL 2411560 (Vt. May 29, 2009) (unpub. mem.) [https://perma.cc/Y6NT-Z6GZ]. We fail to see how Haser helps father's argument. There, we explained that a trial court may classify private-school tuition as an "extraordinary expense" for purposes of calculating a parent's total support obligation only if attendance at the school is "related to the special needs of the child." Id. at *2 (citing McCormick v. McCormick, 159 Vt. 472, 481 (1993)); see 15 V.S.A. § 653(4) (defining "extraordinary expenses" to include "extraordinary . . . education expenses, including expenses related to the special needs of a child, incurred on behalf of involved children"). Here, the magistrate did not purport to classify the children's tuition as an "extraordinary expense." Instead, as discussed above, he treated the children's attendance at the Grammar School as consistent with the standard of living they enjoyed during the parties' marriage and therefore factored it into the deviation analysis.

Finally, father argues that because the magistrate found that mother has a budgetary surplus each month before receiving child support, this suggests that mother "can already meet all the children's living expenses absent the need for any child support, plus pay a portion of the private school tuition not covered by her employment benefit." This does not support father's argument that the presumptive guideline simply "cannot be unfair." The financial situation of the custodial parent is just one factor to be considered in determining whether application of the guidelines is unfair. 15 V.S.A. § 659(a). Had the Legislature intended it to be determinative, it would not have enumerated eight other factors and then mandated consideration of "[a]ny other factors the court finds relevant." Id. For the reasons discussed above, father has not demonstrated that the magistrate erred in weighing these factors and concluding, on that basis, that application of the guidelines would be unfair to mother and the children.

We therefore turn to father's challenges to the magistrate's denial of his motion to allocate child tax credits. Father first contends that the magistrate erred in construing his motion as a request for relief from judgment under Rule 60(b) based on the failure of the final order to specifically address the allocation of dependency exemptions. He notes that 15 V.S.A. § 663 does not require that a final child-support order provide for the allocation of tax credits among the parties and the order did not include such a provision. As a result, he contends, his motion necessarily could not have been a request for relief under Rule 60(b).

This argument is difficult to follow. Rule 60(b) allows a party to seek relief from final judgment on numerous grounds. Nothing in the rule precludes a party from seeking relief on the grounds that a final order either could or should have included a given provision—but did not. Indeed, father identifies no support for his argument. He has not demonstrated that the magistrate erred in analyzing his motion under Rule 60(b), and he does not challenge the court's conclusion that any such motion was time-barred. As a result, we do not reach father's argument that the magistrate erred in concluding that father was required to show a real, substantial, and

7

unanticipated change of circumstances before the court could consider his request or that father failed to do so.[2]

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice

_____

[2] In connection with this argument, father suggests that the magistrate erred in failing to consider the impact of the actual allocation of tax exemptions on the parties' "available income" in its deviation analysis. As father points out, we recognized in Merchant v. Merchant that "certain assumptions about the allocation of dependent exemptions" are " 'baked into' the statute governing the calculation of child support," and that "the impact of a mismatch between the statutory assumptions about who is eligible to take dependent-child exemptions and the parties' actual allocation" is therefore generally "a proper consideration in the deviation analysis." 2015 VT 72, ¶¶ 15, 19-20. Father has not, however, demonstrated that he preserved this argument for our review by requesting that the magistrate consider the allocation of tax exemptions as part of the deviation analysis. See V.R.A.P. 28(a)(4)(A) (requiring that appellant's brief include "the issues presented" and "how they were preserved"); see also, e.g., Merchant, 2015 VT 72, ¶ 11 (declining to address argument not presented to magistrate). We therefore decline to consider this argument. See In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 25, 187 Vt. 208 (declining to reach merits of inadequately briefed argument where appellant did not demonstrate with specific references to record that argument was preserved below).